**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MARK D. ANDERSON, #325850,**

       **Petitioner,**

**v.**
                             **Case No. 2:05-CV-73199**
                             **Honorable Victoria A. Roberts**
                             **Magistrate Judge Virginia M. Morgan**

**RAYMOND D. BOOKER,**

       **Respondent.**

                          /

**OPINION AND ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS AND**
**DECLINING TO ISSUE A CERTIFICATE OF**
**APPEALABILITY**

Petitioner, Mark D. Anderson, is a state inmate currently incarcerated at Lakeland Correctional Facility in Coldwater, Michigan, where Carol R. Howes is the warden. At the time Petitioner initially filed his request for habeas relief, he was incarcerated at Ryan Correctional Facility in Detroit, Michigan where Raymond D. Booker was warden.

Petitioner was convicted of armed robbery, Mich. Comp. Laws §750.529, car jacking, Mich. Comp. Laws §750.529a, felonious assault, Mich. Comp. Laws §750.82, and possession of a firearm during the commission of a felony, Mich. Comp. Laws §750.227b. He filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. §2254. For the reasons stated below, the Court **DENIES** the petition.

**I. BACKGROUND**

Petitioner was tried in Wayne County, Michigan. On November 22, 2000, a circuit court jury found Petitioner guilty of the above stated offenses. He was sentenced on December 15, 2000 to concurrent prison terms of fifteen to thirty years for the armed robbery conviction and two to four

years imprisonment for the assault conviction, both of which were to be served consecutively with

a term of fifteen to thirty years for the carjacking conviction, and a mandatory two year term for the

felony-firearm conviction.

The convictions arose from Petitioner's "unsuccessful attempt to force a chauffeur at gun

point to withdraw funds from an automatic teller machine (ATM) using his client's credit card,

followed by a carjacking and confrontation with the owner of the credit card." *People v. Anderson,*

2003 WL 133061, *1 (Mich. Ct. App. Jan. 3, 2003). The state appellate court in this case set forth

the underlying facts, which are presumed correct on habeas review, *see Monroe v. Smith,* 197 F.

Supp.2d 753, 758 (E.D. Mich. 2001), *aff'd* . 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> On October 16, 1999, Kim Ketchpaw, a limousine driver, transported his client, Joseph Louis Barrow, to two nightclubs in Detroit. At the second nightclub, Barrow gave Ketchpaw a credit card, told Ketchpaw his personal identification number (PIN), and asked him to withdraw $500 from an ATM. At approximately 4:00 a.m., Ketchpaw went to a nearby bank and attempted to make the withdrawal from an outdoor ATM while remaining inside the limousine. Another car pulled into the lot and stopped, but Ketchpaw did not see anyone get out of the car. According to Ketchpaw, shortly thereafter, defendant came up to the driver's side window from behind the car, grabbed Ketchpaw's arm, put a handgun to the back of his head and said, "Do what I tell you or I'll shoot you," and "Give me five hundred dollars." Ketchpaw twice attempted to withdraw the money from the ATM, but the requests were unsuccessful. Defendant then got into the limousine and demanded that Ketchpaw tell him the PIN, following which defendant unsuccessfully attempted the transaction. At defendant's order, Ketchpaw attempted to contact Barrow by calling him and calling the nightclub, but was unsuccessful. Defendant then took Ketchpaw's wallet and the money inside it, approximately eleven hundred dollars. Defendant also took the credit card out of the ATM and retained it.
>
> Defendant subsequently drove the limousine out of the parking lot, and Ketchpaw saw a white car following them. Defendant eventually drove to the nightclub and Barrow came out to the parking lot. Barrow approached the passenger side of the limousine and, when he looked to see who was driving, defendant pointed his gun at Barrow. After Barrow recited the PIN number for the credit card, defendant drove off with Ketchpaw still in the car. Defendant returned to the same bank with the ATM, got out of the limousine, and headed in the direction of the ATM. Ketchpaw then drove the limousine back to the nightclub where he met the police.

*People v. Anderson*, 2003 WL 133061, *1. Petitioner raised the following four issues on direct

appeal and a fifth issue in a supplemental brief:

> I. The stop of [Petitioner] was improper as there was an insufficient reason upon
> which to base a valid investigatory stop therefore any and all evidence acquired as
> a result of said stop must be suppressed.
>
> II. The trial court's ruling not to allow [Petitioner] an adjournment to obtain an
> independent psychiatric evaluation denied [Petitioner] his constitutional rights to
> present a defense and to due process.
>
> III. The evidence presented at trial was insufficient to convict [Petitioner] of felony
> firearm.
>
> IV. The trial court's failure to instruct the jury that the offenses of robbery armed
> and felonious assault are specific intent crimes constitutes reversible error.
>
> V. Was the [Petitioner's] state and federal constitutional rights under the
> confrontation clause and due process clauses violated when the trial court err[ed] in
> impliedly finding that the prosecutor had exercised due diligence in attempting to
> locate and produce Joseph Barrow, an endorsed complainant/res gestae witness to
> the charge of felonious assault, thus, injecting unfounded facts of [Petitioner's] guilt
> or innocence into the jury's deliberation for the above charge, therefore denying
> [Petitioner] a fair trial?

Petitioner then filed additional motions with the Michigan Court or Appeals regarding re-sentencing,

an evidentiary hearing, and striking alleged objectionable language in the People's appellate brief

on direct appeal, each of which were denied. Petitioner also filed a motion for relief from judgment

with the trial court raising the following set of issues while his direct appeal was pending in the

Michigan Court of Appeals :

> He claims that his convictions and sentences are in violation of the prohibition
> against double jeopardy and that he was denied effective assistance of appellate
> counsel because appellate counsel failed to raise the double jeopardy argument on
> appeal, He also claims that his right to due process was violated because he was
> impermissibly detained and was held in police custody for four days without a
> warrant or arraignment. Finally, he insists that his right to due process was further
> violated because the Court allegedly erred in scoring prior record variable 7 ("PRV
> 7) when sentencing him.

3

(Opinion, dated 10/1/04, pg. 3). Petitioner's motion was denied. The Michigan Court of Appeals

affirmed Petitioner's conviction. *People v. Anderson*, 2003 WL 133061, *1. However, Justice

Helene N. White penned a concurring opinion as follows:

> Any error in the court's denial of defendant's motion to suppress was harmless considering Ketchpaw's identification, the videotaped pictures, and defendant's presence in the white Ford Taurus. Further, any error in the court's refusal to grant an adjournment to allow for an independent psychiatric evaluation was also harmless in light of defendant's failure to make any showing that such defense was viable. I join in the majority's disposition of the remaining issues.

*Id.* at *7.

Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme

Court raising the following issues:

> I. The stop of [Petitioner] was improper as there was an insufficient reason upon which to base a valid investigatory stop therefore any and all evidence acquired as a result of said stop must be suppressed.
>
> II. The trial court's ruling not to allow [Petitioner] an adjournment to obtain an independent psychiatric evaluation denied [Petitioner] his constitutional rights to present a defense and to due process.
>
> III. Was (sic) the [Petitioner's] state and federal constitutional rights under the confrontation clause and due process clauses violated when the trial court err[ed] in impliedly finding that the prosecutor had exercised due diligence in attempting to locate and produce Joseph Barrow, an endorsed complainant/res gestae witness to the charge of felonious assault, thus, injecting unfounded facts of [Petitioner's] guilt or innocence into the jury's deliberation for the above charge, therefore denying [Petitioner] a fair trial?
>
> IV. [Petitioner] is entitled to resentencing because the statutory sentencing guidelines were misscored as to prior record variables 2, 5, and 7, and the sentence is a departure from the correct guidelines range.

The Michigan Supreme Court denied Petitioner's application for leave to appeal in a standard

order. *People v. Anderson,* 469 Mich. 946; 671 N.W.2d 46 (2003) (Table). Petitioner subsequently

filed several motions while his application for leave to appeal was pending (i.e., motion for appointment of counsel, motion to remand, etc.), each of which were denied. Petitioner also filed a motion for reconsideration which was also denied. *People v. Anderson,* 469 Mich. 946; 677 N.W.2d 24 (2004) (Table).

Petitioner returned to the state court while his motion for reconsideration in the Michigan Supreme Court was pending. He filed a motion to quash Sergeant Kozlowski's police report and testimony, arguing it lacked in requirements for admissibility. The motion was denied. Petitioner filed a delayed application for leave to appeal the trial court's ruling with the Michigan Court of Appeals as to that issue. Meanwhile, Prtitioner's delayed application for leave to appeal was denied. *People v. Anderson,* No: 254190 (Mich. Ct. App. Aug. 20, 2004) . Petitioner attempted to appeal to the Michigan Supreme Court; his application was rejected as untimely pursuant to MCR 7.302(C)(3).

Following the denial of Petitioner's motion for relief from judgment (order issued October 1, 2004), Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, raising the following issue:

> I. The ends of justice requires (sic) that this honorable court revisit the due process claim concerning whether a delay of more than "48" hours after arrest is presumptively unreasonable absent extraordinary circumstances.

The Michigan Court of Appeals dismissed Petitioner's delayed application because it found that Petitioner was appealing from a decision regarding a second motion for relief from judgment; the first motion was the motion to quash set forth above. *People v. Anderson,* No. 259101 (Mich. Ct. App. Dec. 1, 2004). Petitioner filed a motion for reconsideration of that decision and it was denied.

*People v. Anderson,* No. 259101 (Mich. Ct. App. Jan. 14, 2005). Petitioner filed an application for leave to appeal with the Michigan Supreme Court claiming that his application to the Court of Appeals should not have been dismissed. His application for leave to appeal with the Michigan Supreme Court was denied. *People v. Anderson,* No. 127918 (Mich. Ct. App. May 31, 2005).

Petitioner now seeks a writ of habeas corpus asserting the following claims:

I. [Petitioner's conviction was obtained by use of evidence gained pursuant to an unconditional search and seizure and unlawful arrest in violation of due process.

II. [Petitioner] was denied by the State courts of (sic) his constitutional right to present a defense and to due process of law.

III. [Petitioner] was denied his constitutional right to be heard when the Michigan Court of Appeals recharacterized his motion to quash to a motion for relief from judgment without providing warning of its doing so.

IV. [Petitioner] was denied the effective assistance of trial and appellate counsel upon which no adequate state court process was afforded to advance claims that depend on matters not of record in violation of his due process right to be heard.

Petitioner then filed a motion to amend his pleadings by adding the claim that "Michigan prosecuting authorities knowingly used perjured testimony, and deliberately suppressed material information favorable to him, contrary to law." (Pet. Mot. at 1). The Court granted Petitioner's motion. Respondent filed an answer to the petition asserting that the claims should be denied based on exhaustion, statute of limitations, procedural default, for being non-cognizable, for lack of merit, and/or for not having a substantial impact or influence on the outcome of Petitioner's trial.

## II. STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising

constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith,*

539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. §2254(d).  Therefore, federal courts are bound by a state court's adjudication of a

petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law.  *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998).

Mere error by the state court will not justify issuance of the writ; rather, the state court's application

of  federal law "must have been objectively unreasonable."  *Wiggins,* 539 U.S. at 520-21 (quoting

*Williams v. Taylor,* 529 U.S. 362, 409 (2000) (internal quotes omitted)).  Additionally, this Court

must presume the correctness of state court factual determinations.  28 U.S.C. §2254(e)(1) ("In a

proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant

to the judgment of a State court, a determination of a factual issue made by a State court shall be

presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that

"[t]he court gives complete deference to state court findings of historical fact unless they are clearly

erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as

follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams,* 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of §2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . .

> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law . . . Under §2254(d)(1)'s "unreasonable application" clause, then a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Davis v.Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## III.  DISCUSSION

### A. Fourth Amendment

Petitioner claims there was an insufficient reason upon which to base a valid investigatory

stop of Petitioner's car. Therefore, any evidence acquired as a result of the stop must be suppressed.

Petitioner raised this issue on direct appeal but the Michigan Court of Appeals rejected it:

> [The afternoon following the incident] Sergeant Robert Kozlowski was in an unmarked squad car, checking for stolen cars in the area of Danbury and Lantz, which is a short area that dead ends into either railroad tracks or the yard of a business. The area had three houses two of which were abandoned. During that week, "numerous" stolen vehicles had been recovered from this specific location. Kozlowski observed a white Ford Taurus that was parked facing southbound on Danbury just north of Lantz, with two male occupants inside. He suspected that the vehicle may have been stolen and requested assistance to investigate the car. At that time, Kozlowski recalled seeing a teletype earlier that day about a white Ford Taurus that had been involved in an early morning armed robbery approximately a mile a way. The marked scout car met Kozlowski in the area of Lantz and John R and, as the officers spoke, the Taurus pulled off of Danbury and proceeded westbound on Lantz. The marked unit followed and stopped the car.

> \*   \*   \*

> Here, given the totality of the circumstances, we agree with the trial court's conclusion that the officers acted reasonably in conducting a *Terry [Terry v. Ohio,* 392 U.S. 1 (1968)] stop of defendant's vehicle. In light of defendant's failure to produce a driver's license, registration, or proof of insurance upon request, the officers where justified in detaining defendant until his status and the vehicle's status could be confirmed. Probable cause for defendant's arrest was then established when the officers learned that the vehicle was stolen and that it had been involved in the earlier armed robbery. Accordingly, no Fourth Amendment violation has been demonstrated.

*People v. Anderson*, 2003 WL 133061 at \*2, \*3.

Federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through unconstitutional search and seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Stone v. Powell,* 428 U.S. 465, 494 (1976). In order for the rule of *Stone v. Powell,* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the present case must not have been frustrated by failure of that

mechanism. *Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000).

Michigan provides ample opportunity for litigation of Fourth Amendment claims. Typically, such claims are addressed before trial by means of a motion to suppress. See *People v. Ferguson,* 376 Mich. 90, 93-94; 135 N.W.2d 357 (1965) (holding that motions to suppress must be timely made where the factual circumstances constitute the illegal seizure and are known to the defendant in advance of trial). However, even absent objections in the trial court, Michigan appellate courts entertain Fourth Amendment claims where it appears that the evidence in question affected the outcome of the trial. *People v. Harris,* 95 Moch. App. 507, 509; 291 N.W.2d 97 (1980).

The Court finds that Petitioner has not satisfied either prong of the standard. First, it is undisputed that Michigan has a state procedural mechanism , which in the abstract presents a full opportunity to raise a Fourth Amendment claim before trial. Second, the record supports a conclusion that presentation of Petitioner's Fourth Amendment claim was not frustrated due to a failure of the state's mechanism. In fact, Petitioner filed a motion to suppress and an evidentiary hearing was held. The trial court denied Petitioner's suppression motion, finding that Sergeant Kozlowski acted reasonably when conducting the traffic stop. Therefore, Petitioner's Fourth Amendment claim is not cognizable on habeas review.

## B. Denial of the Right to Present a Defense

Petitioner claims that "the trial court abused its discretion in denying a motion to adjourn trial to allow for an independent psychiatric evaluation of defendant in support of his defense of insanity or diminished capacity." *People v. Anderson, ,* 2003 WL 133061 at *5. State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975).

What is essential to establish elements of a crime is a matter of state law. See *Sanford v.* 288

F.3d 855, 862 (6th Cir. 2002). The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State,* 388 U.S. 14, 19 (1967). However, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer,* 523 U.S. 303, 308 (1998); see also *Lakin v. Stine,* 80 Fed. Appx. 368, 373 (6th Cir. 2003). The circumstances under which a criminal defense may be asserted is a question of state law. *Id.*

The Michigan Court of Appeals addressed the state law governing the issue of evidence in support of an insanity or diminished capacity defense and rejected Petitioner's claim:

> The specific nature or basis of defendant's insanity/diminished capacity defense is indiscernible from his handwritten pretrial motion for forensic evaluation of criminal responsibility, from the trial transcript, or from his appeal brief. However, based on undisputed information in the presentence report, it appears that defendant's asserted insanity/diminished capacity defense would have been based solely on the effects of his long-term drug and alcohol abuse and his ingestion of cocaine and alcohol on the day of the offense. To the extent that this was the basis for the defense, and defendant has not offered this court any other basis, we conclude that an insanity defense was unavailable in light of M.C.L. §768.21a(2), which provides that "an individual who was under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances." Moreover, we note that the law concerning the defense of diminished capacity has changed since defendant's trial. In *People v. Carpenter,* 464 Mich. 223; 627 N.W.2d 276 (2001), the Michigan Supreme Court held that the insanity defense as established by statute is the sole standard for determining criminal responsibility as it relates to mental illness or retardation. Therefore, the Court abolished the use of a "diminished capacity defense" based on evidence of mental abnormalities short of legal insanity to avoid or reduce criminal responsibility by negating specific intent. Because any retrial in this case would necessarily be governed by the holding n *Carpenter,* this issue lacks merit.

*People v. Anderson,* 2003 WL 133061 at *5.

The Court agrees and finds that habeas relief is not warranted on this claim.

### C. Motion to Quash / Motion for Relief from Judgment

Petitioner argues that the motion to quash filed with the trial court in January

2004 was erroneously interpreted as a motion for relief from judgment. Petitioner subsequently filed

a motion entitled "motion for relief from judgment. Since it was viewed by the Michigan Court of

Appeals as a *second* relief from judgment motion pursuant to MCR 6.502(A), a procedural bar

precluded Petitioner's appeal from being reviewed on the merits pursuant to MCR 6.502(G).

Therefore, Petitioner claims that his constitutional right to be heard in the Michigan appellate courts

was violated.

A habeas petitioner's claim that the trial court violated a state court rule when interpreting

a motion as being one filed pursuant to MCR 6.502, is not cognizable in habeas corpus proceedings.

Federal habeas courts have no authority to interfere with perceived errors in state law unless the

petitioner is denied fundamental fairness in the trial process. See *Estelle v. McGuire,* 502 U.S. 62,

67-68 (1991); *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1354 (6th Cir. 1993).

State courts are the final arbiters of state law and the federal courts will not intervene in such

matters. *Id.* Petitioner's claim is based solely upon an alleged wrongful interpretation of a state

court rule. This is precisely the type of perceived error in state law in which this Court will not

intervene. Therefore, the Court finds Petitioner's claim does not warrant habeas relief.

### D. Ineffective Assistance of Trial Counsel

Petitioner claims that his trial attorney failed to properly argue the merits of his Fourth

Amendment claim, and as a result, his representation was ineffective. As an initial matter, the

Respondent asserts that petitioner's claim is not properly before the Court because he failed to

exhaust this issue in the state courts.

Federal courts may not grant a habeas corpus petition unless "the applicant has exhausted

the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A). Although normally the failure to exhaust state court remedies requires dismissal of the entire petition, *Lyons v Stovall,* 188 F.3d 327, 333 (6th Cir.1999) (citing *Rose v. Lundy,* 455 U.S. 509, 522(1982)), the failure to exhaust state remedies is not an absolute bar to adjudication when  as here, the federal claims lack merit, and requiring additional proceedings in state court would waste time and judicial resources. *Id.* at 333; see also 28 U.S.C. §2254(b)(2). The Court, therefore excuses the exhaustion requirement in the interest of judicial economy and proceeds to address the merits of Petitioner's unexhausted claim.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test to determine whether a habeas petitioner received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. *Id.* Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*.

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional  errors, the result of the proceeding

13

would have been different" *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996).

Aside from Petitioner's conclusory statement that trial counsel "failed to competently litigate a meritorious Fourth Amendment claim which allowed the introduction of unlawfully seized evidence obtained pursuant to an unlawful seizure/detention which was conducted for three-days incident to the October 16, 1999 warrantless arrest of Petitioner, which representing counsel failed to adequately investigate and properly communicate with Petitioner as to present to the state courts that the illegality of the unlawful arrest/detention was in violation of the Constitution," Petitioner failed to meet the *Strickland* criteria required to substantiate an ineffective assistance of counsel claim. (See Pet. at ¶11).

In addition, since the Fourth Amendment prohibits police from effecting a warrantless and non-consensual search and seizure, Petitioner's Fourth Amendment claim would only have merit in this ineffective assistance of counsel context, if the alleged Fourth Amendment violation had a substantial and injurious effect in determining the jury's verdict. *Kyger v. Carlton,* 146 F.3d 374, 381-82 (6th Cir. 1998).

In light of the overwhelming evidence of guilt (i.e., testimony from the victim implicating the Petitioner; testimony from law enforcement officers; ATM Security photographs of the incident; line-up identification, etc.), the admission of Petitioner's statement to the police implicating himself did not have a substantial or injurious influence or effect on the jury's verdict. *Id* Therefore, the

Court denies habeas relief on this issue.

### E. Ineffective Assistance of Appellate Counsel

Petitioner says that he received ineffective assistance of appellate counsel when counsel failed to raise the "dead bang winner" issue on appeal of whether Petitioner was impermissibly held in custody "beyond the mandates of 48 hours without a judicial determination of probable cause." (See Pet. at ¶11).

Procedurally, Petitioner faces the same failure to exhaust problem that he has with his ineffective assistance of trial counsel claim. At no point in these proceedings has Petitioner raised ineffective assistance of appellate counsel, despite the fact that, as demonstrated in the procedural history outlined above, Petitioner: (1) filed post conviction pleadings with the Michigan Court of Appeals three times, i.e., Case No: 233783, Case No: 254190, and Case No: 259101; and (2) filed applications for leave to appeal with the Michigan Supreme Court on three occasions, one of which was rejected for being filed out of time, i.e., Case No: 123303 and Case No: 127918. Similarly, Petitioner raised the delayed detention issue in his motion for relief from judgment, but failed to raise it before the Michigan Supreme Court because his attempt to do so was untimely. However, as with the ineffective assistance of counsel claim, the Court excuses the exhaustion requirement in the interest of judicial economy addresses the merits of this unexhausted claim.

In order for Petitioner to prevail on his ineffective assistance of appellate counsel claim, he must show that his arraignment delay is a meritorious issue. Appellate counsel may deliver a deficient performance and prejudice a defendant by omitting a "dead bang winner," which is defined as "an issue which was obvious from the trial record and would have resulted in a reversal on appeal." See *Meade v. Lavigne,* 265 F.Supp.2d 849, 870 (E.D. Mich. 2003). (internal quotations

omitted).

To show prejudice in the context of an appellate counsel claim, Petitioner must show that his claim would have succeeded on appeal. See *Smith v. Robbins,* 528 U.S. 259, 285-86 (2000). It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. See *Jones v. Barnes,* 463 U.S. 745, 754 (1983).

When Petitioner's due process claim was raised in his motion for relief from judgment, the trial court stated:

> The United States Supreme Court has held that a delay in arraignment of more than 48 hours after a warrantless arrest is presumptively unreasonable, unless there are extraordinary circumstances. *Riverside Co. v. McLaughlin,* 500 U.S. 44, 56-57; 111 S.Ct. 1661; 114 L.ED.2d 49 (1991).

> The defendant was arrested on October 17, 1999, for possession of a stolen motor vehicle, a white Ford Taurus. *Anderson, supra,* at *5. During the search incident to this arrest, the police officer found items implicating the defendant in the instant action (armed robbery/carjacking/felonious assault/felony firearm). *Id.* On October 18, 1999, a warrant was issued against the defendant concerning the instant action. Two days later on October 20, 1999, the defendant was arraigned in connection with the instant action. The defendant was not arrested without a warrant in the instant action, but for the theft of the white Ford Taurus, thus, *Riverside Co., supra*, does not apply.

(Opinion, dated 10/1/04, pg. 9). Accordingly, there was no delay in Petitioner's arraignment, and therefore no merit to his claim. Petitioner cannot, therefore, show that he was prejudiced by appellate counsel's failure to raise the arraignment delay issue on direct appeal. Petitioner is not entitled to habeas relief on this claim.

### F. Prosecutorial Misconduct

Finally, Petitioner argues that the prosecutor engaged in misconduct by knowingly using perjured testimony from Sergeant Kozlowski regarding when he learned of the teletype information concerning the carjacking and armed robbery. It is Petitioner's position that knowledge of the teletype information would have provided Sergeant Kozlowski probable cause to conduct a traffic stop relative to his vehicle. However, Petitioner asserts that Sergeant Kozlowski did not learn of the content of the teletype information until after the fact, therefore, vitiating any probable cause basis for the traffic stop.

This claim is also unexhausted since it is first raised in Plaintiff's amended habeas petition. However, for the reasons cited above, the Court reviews the merits of this claim as well.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir. 1999). The Court must focus on the "fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997).

To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins,* 209 F.3d 486, 517-18 (6th Cir. 2000). Mere inconsistencies in a witness' testimony do not establish the

17

knowing use of false testimony by the prosecutor. *Coe v. Bell,* 161 F.3d at 343; *Malcum v. Burt,* 276 F.Supp.2d 664, 684 (E.D. Mich. 2003). Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury either. *Malcum v. Burt,* 276 F.Supp.2d at 684.

Sergeant Kozlowski testified that he "believe[d] it was 10:45 am" on October 16, 1999 when he viewed the teletype information regarding a white Taurus' involvement in a carjacking and robbery earlier that morning. (Tr., 11/20/00, pg. 62). Petitioner was stopped by Sergeant Kozlowski at approximately 2:45 p.m. the same day. The teletype is time stamped 14:02 or 2:02 p.m. Therefore, Petitioner asserts that Sergeant Kozlowski lied about when he became aware of the white Taurus and as a result, had no probable cause to conduct a *Terry* stop.

Sergeant Kozlowski's failed memory about when he learned of the teletype information is insufficient to establish that he committed perjury at trial. The teletype information was available for Sergeant Kozlowski to learn about before Petitioner was stopped by police. Moreover, the incident occurred at approximately 4:30 a.m. on the same day, which was well before Sergeant Kozlowski's encounter with Petitioner. Therefore, Petitioner has not shown that Sergeant Kozlowski perjured himself, but rather that he may have been mistaken as to when and how he came across the teletype information.

In any event, Petitioner failed to meet the criteria necessary to establish a prosecutorial misconduct claim. There is no evidence that the prosecutor knew or should have known Sergeant Kozlowski's testimony to be false. The testimony was that he "believe[d] it was 10:45 am" when he learned the teletype information, which indicates that he was not completely sure. Petitioner has not shown that Sergeant Kozlowski's statements were actually false, since his testimony was about

18

what he believed to be true.

Further, Sergeant Kozlowski's statements are not material. Even if he did not learn about the teletype information until after Petitioner was stopped, the Michigan Court of Appeals noted that despite that fact "the officer had reasonable suspicion to conduct a brief investigatory stop to determine whether the vehicle driven by defendant was stolen." *People v. Anderson,* 2003 WL 133061, *3.

Finally, Petitioner has not demonstrated that the prosecutor knew Sergeant Kozlowski's statements were false. Habeas relief is not warranted on this claim.

.                    **G. Certificate of Appealability**

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See Id.* at 90 (*quoting, Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1072 (6th Cir. 1997) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,' the district judge is, at that point, often best able to determine whether to issue the COA.")

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must "show [ ] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed

19

further'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). The court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any claims upon which habeas relief may be granted. Therefore, the court denies a certificate of appealability.

## IV.  CONCLUSION

Petitioner has not established that he is in State of Michigan custody in violation of the Constitution or laws of the United States.

Accordingly,

**IT IS ORDERED:**

(1)  Petitioner's "Application for Writ of Habeas Corpus" [Dkt. #1] is **DENIED**;

(2)   Petitioner's Request for Teleconference [Dkt. #50], is **DENIED**;

(3)  Petitioner's "Motion for Bond Pending Review of Petition" [Dkt.#51] is **DENIED.**


s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  September 24, 2008

> The undersigned certifies that a copy of this document was served on the attorneys of record and Mark D. Anderson by electronic means or U.S. Mail on September 24, 2008.
>
> s/Carol A. Pinegar
> Deputy Clerk